Spear, J.
1. The first exception is to the sustaining of the plaintiff’s demurrer to the second defense as set up in the amendment to answer. It is insisted that this defense showed the note to have been based upon a gambling consideration, and therefore void under section 4269 of the Revised Statutes. That section provides that all notes, etc., when the whole or any part of the consideration is for money or other valuable things won or lost, laid, staked or betted, at or upon any game, or upon any wager, etc., shall be absolutely void. No one would doubt that the alleged contract was immoral and against public policy, but does it involve a wager ? A wager is defined (Fareira v. Gabell, 89 Pa. State, 89), as a contract in which the parties stipulate that they shall gain or lose upon the happening of an uncertain event in which they have no interest except that arising from the possibility of such gain or loss. In this case the company sold and actually delivered to Kitchen fifty bushels of wheat at fifteen dollars per bushel. It further agreed to sell one *189 hundred bushels of wheat to be grown by Kitchen from this seed, at the same price, less commission of 33|- per cent., and gave its bond to him to secure the performance of this agreement. Had the contract been a lawful one the failure of the company to perform would have been measured by damages and enforced by action on the bond. And, whatever may have been the intention of the company, it is clear that Kitchen had no idea but that the company would perform its agreement, and relied upon the bond as. his security. He did not intend to enter into a gambling contract. In that aspect, therefore, the contract lacked mutuality. It is true that there were elements of uncertainty in the transaction. Kitchen’s crop might fail to yield the quantity he expected would be sold, or any quantity, and the company might not be financially able to respond even should he be ready. But it does not follow that every contract which presents uncertainties is a wager. Nor did the company expect or intend to lose in case any failure of crop should make it impossible for the agreement to sell, on its part, to be carried out. Its intent was to obtain Kitchen’s note for the fifty bushels of wheat delivered, and that alone. In no view of the case was this a gambling contract within the meaning of the section of the statute quoted.
As against the petition the answer may have set up a defense, so, at least, as to throw upon Loudenback the burden of proving a purchase of the note before due, in the usual course of trade, and for value, and, in this aspect, it may be that the demurrer should have been overruled. But we think the exception cannot be sustained because it does not appear that the defendant was prejudiced by the ruling. The answer was subsequently amended by adding an allegation that the plaintiff, at the time he obtained the note, had notice of its want of consideration and fraudulent character. The defendant had, therefore, at the trial, advantage of the allegations of the second defense as originally pleaded, unless the court made some improper and prejudicial ruling as to the introduction of evidence, or order of proof. The record fails to show any error of this kind, and it must be pre *190 sumed, in favor of the judgment, that none such was made. It is settled in Ohio that, in the absence of a bill of exceptions setting out the evidence, if any state of the evidence consistent with the pleadings would justify the verdict and judgment, a reviewing court is bound to presume, in support of the judgment, that such evidence was given. Ide v. Churchill, 14 Ohio St. 372; Bailey v. Smith, Id. 396. And it may be safely concluded that if the defendant had been, in any wise, prejudiced by the holding of the trial court, upon evidence, the vigilant counsel would have seen to it that the error was fully set forth in the record.
2. It is alleged as error that the court said to the jury: “ Briefly, if the purchaser pays cash for a note, he acquires it in the usual course of trade for a valuable consideration.” The equivalent of the above is decided in Tod v. Wick, 36 Ohio St. 370, in these words: “ Where the indorsee of a negotiable promissory note pays cash therefor, he is a purchaser in the usual course of trade,.notwithstanding the fact that he paid for the note a sum less than its fair and reasonable value.” Irrespective of this, however, the charge upon what constitutes a purchase of a note in good faith for value, in the usual course of trade, is full and accurate, and this court would not incline to disturb the judgment, for this cause, alone, even if it doubted the accuracy of the sentence quoted above, taken by itself.
3. The court, in the charge, said to the jury that “it is not sufficient if it only appears that he (plaintiff) took the note under circumstances that ought to have excited suspicion in the mind of a prudent and reasonable man, but it must appear that he took the note under circumstances as show he acted in bad faith, or with a want of honesty.” This is excepted to. We think the exception not well taken. The instruction was given to apply in the event that the jury found the plaintiff purchased the note before due, in the usual course' of trade, for a valuable consideration, and there is express authority for the instruction in Johnson v. Way, 27 Ohio St. 374, and in a large number of other cases. The proposition may be regarded as settled law in this state; *191 and, upon this branch of the case the entire charge is fully as favorable to the defendant below as he could properly ask.
4. It is further urged as error that the court said to the jury that, if entitled to recover at all, the plaintiff was entitled to recover the face of the note, with interest. The theory of this exception is that the indorsee of paper, the consideration of which is illegal or fraudulent, can recover only the amount he paid with interest, because he should not be permitted to speculate as against the maker of the note. A long list of cases is given in support of this claim, and a number of them do support it. It seems to be conceded, however, that, in the absence of fraud or illegality in the inception of the note, though the consideration has wholly failed, the Iona fide purchaser for value before due, may recover the full face with interest. We fail to perceive that, upon principle, there is any difference between the two cases. Undoubtedly such holder’s rights must be determined by ascertaining what he gets by his purchase. If the note, then it seems clear that, unless the maker may be allowed a defense against the note, the measure of his liability is all that appears due on it. Can there be doubt that it is the note he purchases? The familiar rule is that defenses which might be set up as between the original parties to negotiable paper, will not avail as against a Iona fide purchaser for value, in the ordinary course, of trade, before maturity. In other words, such purchaser acquires the note clear of all defenses unless it is absolutely void for want of power in the maker to issue it, or its circulation is by law prohibited by reason of the illegality of the consideration. That is, the purchaser takes the note itself. He does not take a cause of action for money paid to another’s use. In paying, he is not paying money to the use of the maker, or for his benefit. He purchases the maker’s promise to pay. He is protected against defenses because he has the right to put faith in the representation, on the face of the paper, that it was given for a valuable consideration, and, as against the maker, the note is held to be as he represented it. He is, therefore, estopped from *192 denying such, representation. How is the ease changed where fraud, or illegality, enter into the inception of the note ? The note is not void in either case. The purchaser does not any the less purchase the note. He is not, in any sense, less the owner of the paper itself. When action is brought to recover, the suit is just as much upon the note itself in the one case as in the.other. The representation of the maker has the same effect in inducing a transfer of the paper in the one case as in the other, and it would seem that it ought to be no less conclusive in the one case than in the other. The defense of the maker is against the note, and against the note only, in either case. If he may resist the amount of recovery it is because he has a defense to the note which he may be permitted to make. Without such defense the holder could recover the amount appearing due. If the defense is permitted, it does avail against the bona fide purchaser. And thus it would result that the Iona fide purchaser, instead of holding the note clear of equities existing between the original parties, would be subjected to a partial defense. This would seriously impair the usefulness of commercial paper as a medium of exchange. We think the more logical rule, as well as the safer and sounder one is, that the bona fide purchaser, at whatever price, takes the entire obligation of the maker. The amount paid is important as bearing on the bona fides of the purchase, but when it has been ascertained, from all the circumstances, that the purchase was made in good faith, before due, in the ordinary course of business, the recovery should be the amount of the note and interest. Where the indorsee holds the note only as collateral security for another debt, and there is no innocent party entitled to take the surplus, the doctrine is that the recovery is limited to the amount of the debt actually due. This rule is founded upon principles obviously reasonable and just. But, in strictness, such holder is not a purchaser. He holds only for the protection of his actual debt. The case before us is not that case.
The argument ah ineonvenienti affords considerations sup *193 porting the conclusion above indicated. Negotiable paper, in the ordinary course of trade, is likely to pass from hand to hand, and to be purchased for different sums. Its value is determined largely by the present responsibility of the maker, the probability of his continued ability to pay, and his character for punctuality in meeting engagements, and hence that value may change from time to time. If the amount paid is to be taken as the measure of recovery, which purchase is to be regarded as the one fixing the amount of recovery — the last one, or some previous one, and if the latter, which ? It seems to us that the rule contended for by counsel, besides being illogical and tending to impair the value of commercial paper, would lead to perplexing uncertainties.
A strong case sustaining our conclusion is that of Cromwell v. County of Sac, 96 U. S. 51. Bonds authorized by a vote of the people of Sac county, to procure the building of a court-house, had been illegally issued and delivered by a county officer to a contractor who wholly failed to build the court-house, and were purchased by the plaintiff before due for value, without notice of any infirmity. The court held that “ A bona ficle purchaser of negotiable paper for value, before maturity, takes it freed from all infirmities in its origin, unless it is absolutely void for want of power in the maker to issue it, or its circulation is by law prohibited by reason of the illegality of the consideration,” and “ a purchaser of negotiable securities before their maturity, whatever may have been their original infirmity, can, unless he is personally chargeable with fraud in procuring them, recover against the maker the full amount of them, though he may have paid therefor less than their par value.” Mr. Justice Field, in the opinion, after announcing the foregoing, uses this language: “We are aware of numerous decisions in conflict with this view of the law; but we think the sounder rule, and the one in consonance with the common understanding and usage of commerce, is that the purchaser, at whatever price, takes the benefit of the entire obligation *194 of the maker. Public securities, and those of private corporations, are constantly fluctuating in price in the market, one day being above par and the next below it, and often passing within short periods from one half of their nominal to their full value. Indeed, all sales of such securities are made with reference to prices current in the market, and not with reference to their par value. It would introduce, therefore, inconceivable confusion if bona fide purchasers in the market were restricted in their claims upon such securities to the sum they had paid for them.”
Lay v. Wissman, 36 Iowa, 305, is a case directly in point. See, also, Tod v. Wick, supra, and the well considered opin ion of Shauck, J., in the present case, 3 C. C. R. 228.
We find no error in the record, and the

Judgment will be affirmed.